Marc C. Forsythe – State Bar No. 153854
**GOE & FORSYTHE, LLP**
18101 Von Karman Avenue, Suite 1200
Irvine, CA 92612
mforsythe@goeforlaw.com

Telephone:  (949) 798-2460
Facsimile:   (949) 955-9437

Proposed Attorneys for BP Fisher Law Group, LLP

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

| | |
|---|---|
| In re:<br><br>BP FISHER LAW GROUP, LLP,<br><br>            Debtor. | Case No. 8:19-bk-10158-TA<br><br>Chapter 11<br><br>**DEBTOR'S OPPOSITION TO MOTION BY DITECH FINANCIAL, LLC TO DISMISS, OR IN THE ALTERNATIVE, TO TRANSFER VENUE; DECLARATION OF MATTHEW C. BROWNDORF IN SUPPORT THEREOF**<br><br>Hearing Date: February 27, 2019<br>Time:         10:00 a.m.<br>Courtroom:   5B<br>               United States Bankruptcy Court<br>               411 West Fourth Street<br>               Santa Ana, CA 92701 |

## TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................5

II.   STATEMENT OF FACTS ......................................................................................6

    A.  Matthew Browndorf is a Citizen of California ..................................................6

    B.  The Debtor's Multi-State Presence and Operations...........................................6

    C.  The Debtor's California Nerve Center ...............................................................7

    D.  The Affiliated Bankruptcy Proceedings ............................................................9

III.  ARGUMENT ..........................................................................................................9

    A.  Applicable Law and Burden of Proof ...............................................................9

    B.  The Central District of California is a Proper Venue.......................................12

    C.  Transfer of Case Is Not Warranted .................................................................16

    D.  Ditech's Recent February 11, 2019 Bankruptcy Filing Chose The Southern District of New York as a Proper Venue Despite Its Multi-State Operations and Majority of Day-To-Day Business Operations in Fort Washington, Pennsylvania.....................................20

IV.  CONCLUSION ......................................................................................................21

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*EnSource Investments LLC v. Tatham*,
   2017 U.S. Dist. LEXIS 145208, *8, 2017 WL 3923784 (Bankr. S.D. Cal. 2017) ..................... 16

*Hertz Corp. v. Friend*,
   559 U.S. 77 (2010) ................................................................................................................. 12

*In re 1606 New Hampshire Avenue Assocs.*,
   85 B.R. 298 (Bankr. E.D. Pa. 1988) ....................................................................................... 11

*In re Baltimore Food Sys., Inc.*,
   71 B.R. 795 (Bankr. D.S.C. 1986) .......................................................................................... 11

*In re Blixseth*,
   484 B.R. 360 (B.A.P. 9th Cir. 2012) ...................................................................................... 10

*In re Cytodyn of New Mexico, Inc.*,
   374 B.R. 733 (Bankr. C.D. Cal. 2007) .................................................................................... 17

*In re Donald*,
   328 B.R. 192 (B.A.P. 9th Cir. 2005) ................................................................................. 17, 19

*In re DRI Companies.*,
   552 B.R. 195 (Bankr. C.D. Cal. 2016) .................................................................................... 11

*In re Garden Manor Assocs., L.P.*,
   99 B.R. 551 (Bankr. S.D.N.Y. 1988) ...................................................................................... 11

*In re Greenhaven Assocs., Ltd.*,
   93 B.R. 35 (Bankr. S.D.N.Y. 1988) ........................................................................................ 13

*In re Holiday Towers, Inc.*,
   18 B.R. 183 (Bankr. S.D. Ohio 1982) ................................................................................. 10, 11

*In re Houghton Mifflin Harcourt Pub. Co.*,
   474 B.R. 122 (Bankr. S.D.N.Y. 2012) .................................................................................... 10

*In re Midland Assocs.*,
   121 B.R. 459 (Bankr. E.D. Pa. 1990) ..................................................................................... 13

*In re Miller*,
   433 B.R. 205 (Bankr. W.D. Mich. 2010) ................................................................................ 10

*In re Nat'l Consumer Mortg. LLC*,
   2010 U.S. Dist. LEXIS 153351, 2010 WL 2384217 (Bankr. C.D. Cal. 2010) ........................ 17

*In re Oklahoma City Assocs.*,
   98 B.R. 194 (Bankr. E.D. Pa. 1989) ....................................................................................... 11

*In re Pavilion Place Assocs.*,
   88 B.R. 32 (Bankr. S.D.N.Y. 1988) .................................................................................... 10, 11

*In re Peachtree Lane Associates, Ltd.*,
   206 B.R. 913 (N.D. Ill. 1997) ............................................................................................. 11, 16

*In re Pickwick Place Ltd. P'ship*,
  63 B.R. 290 (Bankr. N.D. Ill. 1986) ...................................................................................13

*In re Suzanne de Lyon, Inc.*,
  125 B.R. 863 (Bankr. S.D.N.Y. 1991) ...............................................................................11

*In re The Willows Ltd. P'ship*,
  87 B.R. 684 (Bankr. S.D. Ala. 1988) .................................................................................11

*In re Washington, Perito & Dubuc*,
  154 B.R. 853 (Bankr. S.D.N.Y. 1993) ...............................................................................10

*Jackson v. Fenway Partners, LLC*,
  No. C 13-00005 JSW, 2013 U.S. Dist. LEXIS 70138, 2013 WL 2147232, at *1 (N.D. Cal. May
  15, 2013) .............................................................................................................................16

*Mendoza v. Gen. Motors, LLC*,
  No. CV 10-2683 AHM VBKX, 2010 U.S. Dist. LEXIS 134694, 2010 WL 5224136, at *1 (C.D.
  Cal. Dec. 15, 2010) ............................................................................................................16

*Reid-Ashman Mfg., Inc. v. Swanson Semiconductor Serv., L.L.C.*,
  No. C-06-04693 JCS, 2008 WL 425638, 2008 U.S. Dist. LEXIS 14748 (N.D. Cal. Feb. 14,
  2008) ...................................................................................................................................16

*TIG Ins. Co. v. Smolker*,
  264 B.R. 661 (Bankr. C.D. Cal. 2001) ...............................................................................16

**Statutes**

28 U.S.C. § 1408 ..................................................................................................................9

28 U.S.C. § 1412 ...........................................................................................................16, 19

1    BP Fisher Law Group, LLP, the Debtor and Debtor-in-Possession herein ("Debtor" or the

2    "Firm"), hereby opposes the Motion to Dismiss, or in the alternative, to Transfer Venue, filed by

3    Ditech Financial, LLC ("Ditech") on February 6, 2019 as Docket No. 23 ("Motion") as follows:

4    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

5    **I.    <u>INTRODUCTION</u>**

6    Venue is properly set for this case in California.  The Debtor is a multi-state law firm with

7    a national practice and clientele.  The Debtor maintains office locations in California, New York,

8    New Jersey, and Maryland and has a myriad of local counsel arrangements in states throughout the

9    country.  Debtor's general partner, LF Runoff 2, LLC, fka Plutos Sama, LLC ("LF"), owns 98% of

10    the Debtor and is physically located in Irvine, California.  Matthew Browndorf ("Browndorf") is

11    the majority shareholder of LF and at all relevant times herein, has owned real property in

12    California and been domiciled in California.  LF makes all of the final and critical business

13    decisions of Debtor, including but not limited to, site locations, budgeting and staffing,

14    accounting, and whether or not to continue operations.  It was LF's decision to cease operations of

15    the Debtor and file the instant proceeding.  LF is the nerve center of the Debtor and its principal

16    place of business is in fact Irvine, California and not Maryland.

17    Debtor's affiliate entities have or are preparing to file for bankruptcy protection in the

18    Central District of California, Santa Ana Division.  In addition to the Debtor's case filed under the

19    direction of LF, LF will be filing for bankruptcy protection in this district no later than February

20    15, 2019.  Additionally, LF is in the process of preparing a petition for Chapter 11 bankruptcy

21    protection for its other affiliated default law firm, BP Peterman Law Group LLC, who handled

22    LF's Midwest default operations.  During all relevant time periods herein, LF's Midwest

23    operations maintained offices in Wisconsin, Indiana, and Illinois.  A motion for joint

24    administration of all three bankruptcy cases is being prepared and will be filed prior to the hearing

25    on this Motion.  In the interests of judicial economy, all three of the affiliate bankruptcy cases are

26    properly venued in this district.

27    In the Motion, Ditech fails to satisfy its burden to enable proper venue transfer of the

28    instant proceeding.  This Court maintains broad discretion to transfer or retain a bankruptcy case.

1  Subject to the presumption in favor of retaining jurisdiction, under the totality of the

2  circumstances, neither the interests of justice, nor convenience of the parties supports venue

3  transfer.  Debtor's multi-state practice encompassed physical office locations in a variety of states

4  and the firm maintained a business presence and extensive local counsel relationships throughout

5  the country.  In addition to the substantial national business operations, as demonstrated herein,

6  Debtor's core business decisions are and have been made in Irvine, California, by its 98% owned

7  general partner, LF.  Similarly, all LF principals work and reside in California.  Accordingly,

8  venue is proper in this case under 28 U.S.C. 1408 and should not be transferred to Maryland under

9  28 U.S.C. 1412 and its progeny.

10  **II.    STATEMENT OF FACTS**

11          **A.    Matthew Browndorf is a Citizen of California**

12          Browndorf is the majority shareholder of LF and is the primary decision maker for the

13  Debtor.  At all relevant times herein, Browndorf has been a citizen of California, owns real

14  property in California, and is domiciled in California.  *See* ¶ 1 of the Declaration of Matthew C.

15  Browndorf ("Browndorf Decl.") attached hereto and incorporated herein by this reference.

16  Browndorf executed the bankruptcy petition commencing Debtor's case, as well as numerous

17  declarations already filed with this Court.

18          **B.    The Debtor's Multi-State Presence and Operations**

19          Debtor is a default law firm that operates in several jurisdictions.  Browndorf Decl. ¶ 2,

20  attached hereto and incorporated herein by this reference.  In addition to the Maryland operations

21  that Ditech's Motion focuses on, the Debtor also has a physical presence in New Jersey and New

22  York where it handles residential mortgage default related proceedings in those states as well as in

23  Irvine, California, where its subsidiary entity, Civil Demand Associates ("CDA") and 98% general

24  partner, LF, are physically located.[1]  Browndorf Decl. ¶ 3.  While many of the day-to-day aspects

25  of the Debtor's residential mid-Atlantic default operations occurred within Maryland, the Debtor's

26  operations were also conducted directly in other states through offices physically located in New

27  

28  ────────────────

[1] LF is the successor entity in interest and general partner of Debtor.

Jersey, New York, and California. In addition, the Debtor also indirectly operated in numerous

other states including but not limited to Florida, North Carolina, Connecticut, Texas, Arizona, and

Colorado through the use of local counsel agreements.  Browndorf Decl. ¶ 4.  During all relevant

time periods, all the major business decisions regarding this extensive Debtor network were and

are made in Irvine, California, where the Debtor's general partner, LF, is physically located and

Browndorf is domiciled.  Browndorf Decl. ¶ 5.[2]

## C.    **The Debtor's California Nerve Center**

As the general partner of the Debtor, LF is the final decision-maker with respect to all the

Debtor's major business decisions.  Browndorf Decl. ¶ 7.  The Debtor firm was purchased by LF

in June 2015 as part of its effort to develop a nationwide network of affiliated default law firms.

LF also subsequently acquired another default law firm, BP Peterman Law Group LLC, located in

Wisconsin, with additional offices in Illinois and Indiana, and until recently had been in the

process of further expanding this network through proposed acquisitions of other default law

firms.  Browndorf Decl. ¶ 8.  The day-to-day operations of the Debtor firm was originally locally

managed by the selling partner, Jeffrey B. Fisher.  During the time Mr. Fisher was present, LF was

primarily responsible for managing the back-office functions, providing capital infusions and

making major business decisions relating to such matters as the location of the office (LF made

the decision to move the Debtor firm to National Harbor, MD), downsizing the Debtor's staffing

(LF was forced to conduct substantial downsizing during this period in an attempt to right-size the

business) and determining in what jurisdictions the Debtor would operate (LF made the decision

to directly expand Debtor operations into New Jersey, New York and Pennsylvania and indirectly,

through local counsel agreements, expand Debtor operations into numerous other jurisdictions).

Browndorf Decl. ¶ 9.  However, shortly after the acquisition of the Debtor by LF, the relationship

between LF and Mr. Fisher became strained and in late 2016 Mr. Fisher left the Debtor firm

entirely.  The Debtor firm then faced a transitory period during which it faced a revolving door of

---

[2] Ditech incorrectly asserts that the Debtor did not have a physical presence in California.  As shown in **Exhibits "1" and "2"** attached to the Browndorf Decl. (*see ¶ 6*), the Debtor has a physical office space located at 1900 Main Street in Irvine, California and even has a nameplate with the Debtor's name on the exterior of that building.

1    regional managing attorneys in the Debtor's Maryland office.  As a result, LF made the decision to

2    invest in regional management by bringing in two highly-compensated individuals to try and turn

3    around this troubled Debtor firm – one to serve as an administrative office manager (Andrew

4    Corcoran) and one to serve as a new managing partner in Maryland (Shannon Kreshtool).

5    Browndorf Decl. ¶ 10.  Under the direct supervision of and in coordination with LF management,

6    these two individuals engaged in significant efforts to try and resolve the Debtor's problems in the

7    Maryland office, but were unable to do so.  Eventually, in the fall of 2018, the Firm was

8    terminated by Fannie Mae, who revoked its no-objection letter attorney network firm status, such

9    that the Firm lost business with Fannie Mae.  Browndorf Decl. ¶ 11.

10    The loss of the "Fannie ticket" forced LF to investigate other strategic alternatives as a

11    means of salvaging the Debtor firm.  Browndorf Decl. ¶ 12.  As the general partner of the Debtor,

12    LF made significant efforts to resolve the issues with Fannie Mae, made the decision to implement

13    significant cost reduction measures in order to try to stabilize the Debtor firm and even considered

14    strategic alternatives such as combining the Debtor firm with other affiliated firms as a means to

15    solve the problems faced by the Debtor.  None of these proved to be immediately viable, however,

16    and as the Debtor continued to face more and more issues and litigation, LF eventually came to

17    the unfortunate conclusion that the Debtor firm must file for bankruptcy protection in order to

18    either try and salvage it in some alternative form or, if that was not possible, to responsibly wind it

19    down.  Browndorf Decl. ¶ 13.

20    Throughout this period, LF made and continues to be the final decision-maker with respect

21    to any major business decisions for the Debtor firm including decisions relating to critical items

22    such as (i) where to house the Debtor's different offices; (ii) the appropriate budget for the Debtor

23    staffing; (iii) the hiring and firing of the Debtor's local management; (iv) how much to leverage

24    the Debtor; and (v) whether to continue operating the Debtor firm at a loss or, as was finally

25    decided, whether to declare bankruptcy.  Browndorf Decl. ¶ 14.  Indeed, many of the items

26    discussed in Ditech's motion were the result of decisions made in California by LF.  LF made the

27    decision to initially house the Debtor's Maryland staff at 174 Waterfront Street in National Harbor,

28    MD and LF made the decision to terminate that lease and move the Debtor's Maryland office to its

1  new location in Bowie, Maryland.  Browndorf Decl. ¶ 15.  LF made the decision to hire Ms.

2  Kreshtool and Mr. Corcoran to be physically present as local turn-around leadership in the

3  Debtor's Maryland office for the primary purpose of trying to turn around the highly troubled

4  firm.  Moreover, it is LF that made the decision to place the Debtor firm into bankruptcy and

5  intends to file bankruptcy protection for itself and Debtor's affiliated law firm, BP Peterman Law

6  Group LLC.  Browndorf Decl. ¶ 16.

7  **D.**    **The Affiliated Bankruptcy Proceedings**

8  On January 15, 2019, under the direction of LF, the Debtor filed for Chapter 11 bankruptcy

9  protection in this Court as part of LF's over-arching decision to exit the default law firm business.

10  Browndorf Decl. ¶ 17.  LF also is in the process of filing for bankruptcy protection for itself and

11  its other affiliated default law firm, BP Peterman Law Group LLC, which has (or during the

12  relevant time period had) offices in Wisconsin, Indiana, and Illinois to conduct default law

13  services in the Midwest.  LF intends to file a motion for joint administration of the bankruptcy

14  cases in order to consolidate these three separate but substantially related bankruptcy proceedings.

15  Browndorf Decl. ¶ 18.[3]

16  **III.**    **ARGUMENT**

17  **A.**    **Applicable Law and Burden of Proof**

18  The statute governing the appropriate venue for bankruptcy cases is 28 U.S.C. § 1408,

19  which provides:

20  Except as provided in section 1410 of this title, a case under title 11 may be
21  commenced in the district court for the district—

22  (1) in which the domicile, residence, principal place of business in the United
23  States, or principal assets in the United States, of the person or entity that is the

---

24  [3] It is noteworthy that on February 11, 2019, Ditech itself filed for Chapter 11 Bankruptcy
25  protection and chose to do so in the Southern District of New York despite the fact that its state of
incorporation is Maryland and its principal executive offices as well as, upon information and
belief, the majority of its day-to-day operations are all located in Fort Washington, Pennsylvania.
26  *See* Ditech Holding Corporation Securities and Exchange Commission Form 8-k dated  February
11, 2019 *available at* http://investor.walterinvestment.com/phoenix.zhtml?c=227999&p=irol-
27  SECText&TEXT=aHR0cDovL2FwaS50ZW5rd2l6YXJkLmNvbS9maWxpbmcueG1sP2lwYWdllP
TEyNjg5MDAzJkRTRVE9MCZTRVE9MCZTUURFU0M9U0VDVElPTl9FTlRJUkUmUmc3Vic2lk
28  PTU3.

subject of such case have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one-hundred-and-eighty-day period than the domicile, residence, or principal place of business, in the United States, or principal assets in the United States, of such person were located in any other district; or

(2) in which there is pending a case under title 11 concerning such person's affiliate, general partner, or partnership.

28 U.S.C. § 1408.  The stated four bases for venue are stated in the **alternative,** meaning that **any one of the four tests** (domicile, residence, principal place of business, *or* principal assets) is sufficient to establish proper venue.  As the Debtor is not a natural person, only three of the tests apply (domicile, principal place of business, and principal assets) as a business entity does not have a "residence" for purposes of the statute.  *In re Houghton Mifflin Harcourt Pub. Co.*, 474 B.R. 122, 135 (Bankr. S.D.N.Y. 2012) (concluding that "residence" under § 1408(1) applies only to natural persons and not business entities).

Thus, a corporation *may* file for bankruptcy in multiple venues, including the venue where (i) it is domiciled, (ii) it has its principal place of business, *or* (iii) where its principal assets are located.  "Since the test is in the alternative, venue may properly lie in more than one district."  *In re Washington, Perito & Dubuc*, 154 B.R. 853, 859 (Bankr. S.D.N.Y. 1993); *see also In re Blixseth,* 484 B.R. 360, 365 (B.A.P. 9th Cir. 2012); *In re Pavilion Place Assocs.*, 88 B.R. 32, 35 (Bankr. S.D.N.Y. 1988) ("the principal place of business provides an independent basis of venue" apart from the location of assets).

There is a natural presumption that the debtor filed the bankruptcy case in a proper venue. *In re Miller*, 433 B.R. 205, 212 (Bankr. W.D. Mich. 2010); *see also In re Holiday Towers, Inc.*, 18 B.R. 183, 186 (Bankr. S.D. Ohio 1982) ("The mere allegation by the debtor that its principal place of business is within this district is sufficient to establish a prima facie case in support of proper venue.").  Thus, the party objecting to venue bears the initial burden of proof and is required to show by a preponderance of evidence that venue is improper.  *In re DRI Companies.*, 552 B.R. 195 (Bankr. C.D. Cal. 2016).

In determining a debtor's principal place of business, "courts have often looked to the place where the debtor's *major business* decisions" were made.  *In re Peachtree Lane Associates,*

1    *Ltd.*, 206 B.R. 913, 918 (N.D. Ill. 1997) (emphasis added) *aff'd., Matter of Peachtree Lane*

2    *Assocs., Ltd.*, 150 F.3d 788 (7th Cir. 1998).[4]  Moreover, courts have specifically rejected the use of

3    "an 'operational' test that looks to the place where day-to-day business is transacted or where the

4    majority of the debtor's dealings with the public take place" in determining a debtor's principal

5    place of business.  *Id.*  Instead, courts have held that such a "bulk of activity" operational test only

6    relates to determining the location of a debtor's principal assets *not* the principal place of business,

7    which is determined by the "nerve center" test.  *In re Holiday Towers, Inc.*, 18 B.R. at 186–87; *see*

8    *also In re Pavilion Place Assocs.*, 88 B.R. at 35 (although daily operations of the limited

9    partnership's shopping center took place elsewhere, they were overseen by managers in New York

10   and the principal place of business was in New York); *In re The Willows Ltd. P'ship*, 87 B.R. 684,

11   685 (Bankr. S.D. Ala. 1988) ("The location of a partnership's principal place of business is a

12   question of fact . . . and in making that determination the courts look to 'the place where the

13   debtor makes its major business decisions.' . . .  This principle applies regardless of the location of

14   the debtor's principal assets.").  The Supreme Court has specifically upheld this "nerve center"

15   test for purposes of determining a business's principal place of business.  *See Hertz Corp. v.*

16   *Friend*, 559 U.S. 77, 80 (2010) (adopting and applying the "nerve center" test to determine an

17   entity's "principal place of business" for diversity jurisdiction purposes and defining the "principal

---

19   [4] *See also In re Washington, Perito & Dubuc*, 154 B.R. 853 (Bankr. S.D.N.Y. 1993); *In re*
20   *Suzanne de Lyon, Inc.*, 125 B.R. 863, 867 (Bankr. S.D.N.Y. 1991) ("where the debtor makes its
     major business decisions ... constitutes the principal place of business of a debtor, notwithstanding
21   the physical location of its assets or production"); *In re Oklahoma City Assocs.*, 98 B.R. 194, 198
     (Bankr. E.D. Pa. 1989) ("it is generally and correctly held that the place where the debtor makes
22   its major business decisions constitutes the principal place of business of that debtor"); *In re*
     *Garden Manor Assocs., L.P.*, 99 B.R. 551, 553 (Bankr. S.D.N.Y. 1988) (venue in limited
23   partnership's chapter 11 case was proper in New York, where the major business decisions were
24   made, although the sole asset an apartment complex was in Arizona and the day-to-day property
     management decisions were made in Arizona); *In re The Willows Ltd. P'Ship*, 87 B.R. at 685
25   (principal place of business for single-asset real estate limited partnership was where the debtor
     made its major business decisions, not where the apartment complex was located); *In re 1606 New*
26   *Hampshire Avenue Assocs.*, 85 B.R. 298, 302–03 (Bankr. E.D. Pa. 1988) ("[t]he clear weight of
     authority" supported venue in Pennsylvania, where "significant management decisions" of the
27   debtor were made, although the debtor's sole asset an office building was in D.C); *In re Baltimore*
     *Food Sys., Inc.*, 71 B.R. 795, 801 (Bankr. D.S.C. 1986) (debtor's principal place of business was
28   where the company's sole chief executive and decision-maker had his offices).

1  place of business" as "the place where the corporation's high-level officers direct, control, and

2  coordinate the corporation's activities").

3      **B.      The Central District of California is a Proper Venue**

4      Under the applicable "nerve center" analysis, the Central District of California is the

5  proper venue for these bankruptcy proceedings because Debtor's principal place of business is

6  located within this district.  The Debtor's general partner, LF, is located within this district, the

7  major business decisions regarding the Debtor are and will be made by LF within this district, and

8  the individual who is primarily in charge of making the decision for the Debtor is Browndorf, who

9  is domiciled in and a citizen of California.  As the weight of relevant caselaw makes clear, these

10  facts demonstrate that venue is proper within this district.

11      Ditech's attempt to transform day-to-day operational issues relating to the Debtor's mid-

12  Atlantic regional office into evidence that the Debtor's nerve-center is located within Maryland is

13  untenable.  The fact that several local managers are located within Maryland (*see* Motion at p. 5),

14  that some of the Debtor checks were issued from bank accounts in Maryland (*see id*), and that the

15  Debtor retains an office in Maryland (*see id*) are insufficient to establish that the Debtor's "nerve

16  center" is in Maryland.  Indeed, those facts merely demonstrate that, not surprisingly, some day-

17  to-day operational activities occur within the Debtor's Maryland office.  As demonstrated by the

18  Browndorf Declaration, the managing member of Debtor, LF, owns 98% of Debtor, and is

19  physically located in Irvine, California where it makes Debtor's major business decisions.

20  Browndorf Decl. ¶¶ 4–7.

21      Among other things, LF, as the Debtor's general partner, made all the key business

22  decisions regarding: (i) the budget for staffing at the Debtor including staffing within the Debtor's

23  Maryland office and the appropriate compensation for the Debtor's regional managers; (ii) the

24  location of all the Debtor's offices and the jurisdictional footprint of the Debtor firm including

25  whether to expand into or retract from certain jurisdictions; (iii) what banks the Debtor should use

26  for its local and national banking needs; (iv) how much to leverage the firm in connection with its

27  effort to resolve the operational financial issues the Debtor was facing and what sources of debt

28  the Debtor should utilize; and (v) whether to continue operating the Debtor firm at a loss or, as

1    was finally decided, whether to file this petition pursuant to chapter 11 of the bankruptcy code.

2    Browndorf Decl. ¶ 19.

3         The above are just some general examples of the major business decisions that were made

4    by LF in Irvine, California but even these limited examples clearly demonstrate that the Debtor's

5    principal place of business is the location of its general partner, LF, within this district.  Indeed,

6    Courts have repeatedly held that the location of a debtor's general partner is an appropriate venue

7    for a bankruptcy petition based on application of the nerve center test.  *See, e.g., In re Midland*

8    *Assocs.*, 121 B.R. 459, 460 (Bankr. E.D. Pa. 1990) (treating the place where the general partner of

9    a debtor limited partnership made the debtor's major business decisions as the debtor's principal

10   place of business); *In re Greenhaven Assocs., Ltd.*, 93 B.R. 35, 40 (Bankr. S.D.N.Y. 1988) (venue

11   was proper in New York, where the general partner of a limited partnership had its principal place

12   of business); *In re Pickwick Place Ltd. P'ship*, 63 B.R. 290, 291 (Bankr. N.D. Ill. 1986) (venue

13   proper where all the general partners of a limited partnership were located).  The fact that the

14   Debtor, pursuant to the major business decision made by its general partner, LF, maintained an

15   operational presence in Maryland, among other locations in several other states, does not render

16   Maryland the Debtor's principal place of business under the appropriate "nerve center" analysis.

17        Ditech's assertion that the Debtor's principal place of business is located within Maryland

18   is contrary to the law and facts.  In support of this untenable position, Ditech selectively chooses

19   and mischaracterizes the pertinent facts.  For example, Ditech's states that the Debtor "wrote and

20   mailed some *or all* checks from bank accounts in Maryland."  Motion at p. 5 (emphasis added).

21   However, Ditech is well aware that many of the Debtor's checks were written out of accounts not

22   located in Maryland and sent out directly from LF staff located in Irvine, California.  Browndorf

23   Decl. ¶ 20.  Thus, contrary to Ditech's factual assertions, the Debtor did not write and mail "all

24   checks from bank accounts in Maryland."  In fact, although Debtor maintains two accounts in

25   Maryland, one operating account and one trust account, and it also maintains numerous accounts

26   in other jurisdictions as it also directly or indirectly does business in other states including but not

27   limited New Jersey, New York, Pennsylvania, and California.  Browndorf Decl. ¶ 21.  Thus, in

28   connection with its business in these other jurisdictions (as well as in connection with the back-

office services provided to Debtor by LF and its affiliates), Debtor maintains numerous other

accounts that are controlled by its managing member, LF in Irvine, California, outside of

Maryland.  Indeed, the majority of the funds within the Debtor's possessions are held within these

non-Maryland accounts controlled by the Debtor's general partner, LF.  Browndorf Decl. ¶ 22.

Ditech also vastly exaggerates the nature or relevance of the facts.  For example, Ditech

claims that the "the vast majority of the [Debtor's] partners live and practice law in Maryland" but

provides no basis for this assertion other than the location of the Debtor's managing partner in

Maryland and the Debtor's administrative office manager in Maryland.  (*See* Motion at p. 5.).

Contrary to Ditech's information and belief, under either a strict headcount or pro rata equity

analysis "the vast majority of the law firm's partners" do *not* in fact live and practice within

Maryland.  The two Debtor partners that are physically located in the Maryland office (one of

which only functions as an administrative office manager) only represent two of the four Debtor

firm partners on a plain headcount basis and, more importantly, only represent *2%* of the Firm

partners on a much more pertinent equity based pro rata analysis.  On the equity based pro rata

analysis, 98% of the firm partnership is located in Irvine, California as that is the location of the

Debtor's general member, LF.  Browndorf Decl. ¶ 23.  It is highly telling that all of the decisions

regarding the hiring and compensation of the Maryland regional leadership were made by LF in

Irvine, California.  Indeed, the managing member of LF personally interviewed, made offers to

and determined compensation for both of the above discussed individuals.  This is not surprising,

because LF generally made the final decision with respect to all of the major decisions regarding

the Debtor's staffing including the appropriate staffing budget and any decisions regarding the

hiring, appointment, termination, compensation and title of any senior staff in the Debtor's

Maryland office as well as all of the other Debtor offices.  Browndorf Decl. ¶ 24.

Likewise, Ditech also notes the location of the Debtor's mid-Atlantic operating office in

Maryland as evidence of its principal place of business but fails to point out other pertinent facts

relating to the location of the Maryland office that clearly demonstrate that the Debtor's nerve

center was in Irvine, California, where LF is located.  Although Ditech correctly notes the former

and current location of the Debtor's Maryland office, it ignores or is simply unaware that all of

1   major decisions regarding the Debtor's Maryland office location were in fact made by LF in

2   Irvine, California.  As the general partner of the Debtor, LF made the decision to lease space in

3   National Harbor, Maryland for the Debtor's Mid-Atlantic hub, LF made the decision to terminate

4   the National Harbor lease pursuant to a settlement with the landlord in order to reduce operational

5   overhead costs and LF made the final decision to move the Maryland office to its current location

6   in Bowie, Maryland.  The terms of these leases, the terms of the settlement with the landlord and

7   all of the other final decisions regarding the Debtor's locations were made by LF in Irvine,

8   California.  Browndorf Decl. ¶ 25.

9        Finally, while Ditech is likely not yet aware of this fact, on February 13, 2019, the

10  Debtor's general partner, LF, also filed for Chapter 11 bankruptcy protection in this Court.  LF is

11  also in the process of preparing a petition for Chapter 11 bankruptcy protection on behalf of its

12  other affiliated default law firm, BP Peterman Law Group LLC (with additional offices located in

13  Wisconsin, Illinois and Indiana) in this Court and expects to have that filed shortly.  LF also

14  intends to file a motion for joint administration of the bankruptcy cases with this Court in order to

15  consolidate these three separate but substantially related bankruptcy proceedings.  Accordingly,

16  the interests of judicial efficiency and economy highly favor maintaining all of these bankruptcy

17  proceedings in a single court under joint administration.  Transferring the Debtor's bankruptcy

18  proceeding to a Maryland bankruptcy court will only further complicate matters.

19       At its core, Ditech's argument that venue is improper appears to come down to an

20  equitable plea that this Court should simply ignore the law and the facts relevant to determining

21  the Debtor's principal place of business because "creditors and counterparties . . . had a reasonable

22  expectation that defending their rights against [the Debtor] would not require to travel 2,600 miles

23  across country."  (Motion at pgs. 6–7).  But as other courts have previously held, such equitable

24  arguments, no matter how sympathetic, do not justify ignoring the law regarding a debtor's

25  principal place of business or the appropriate application of the law to the cold hard facts.  *See In*

26  *re Peachtree Lane Associates, Ltd.*, 206 B.R. at 924 (the troubles that brought [the debtor] into

27  federal court in Illinois were not [day to day operational issues with an asset] but that its financial

28  and investment status had decreased" and "[a]lthough '[o]ne may perhaps have some sympathy for

1   ... local creditors of a ... concern who suddenly find that its financial heart' is many miles away, . .

2   . that does not permit a court to ignore the location of that financial place of business").

3          While the day-to-day operational decisions and issues that Ditech cites are at least

4   arguably relevant to determining the location of the Debtor's assets, it was not the basis for the

5   Debtor's choice of venue.  As demonstrated above, the major business decisions were made by the

6   Debtor's general partner, LF, located within this district.  Accordingly, pursuant to the "nerve-

7   center" analysis the Debtor's decision to file in this district was entirely appropriate and

8   reasonable and thus there is no valid basis for disturbing the Debtor's choice of venue.

9          **C.    <u>Transfer of Case Is Not Warranted</u>**

10         Pursuant to 28 U.S.C. § 1412, a bankruptcy court has the discretion to transfer (or retain)

11  venue of a case or proceeding in the interests of justice or for the convenience of the parties.  *See*

12  *EnSource Investments LLC v. Tatham*, 2017 U.S. Dist. LEXIS 145208, *8, 2017 WL 3923784

13  (Bankr. S.D. Cal. 2017).[5]   Request for venue transfers pursuant to §1412 "requires a case by case

14  analysis that is subject to the broad discretion of the court."  *TIG Ins. Co. v. Smolker*, 264 B.R.

15  661, 668 (Bankr. C.D. Cal. 2001).  A debtor's choice of forum in accordance with a § 1412

16  analysis carries a presumption in favor of the court in which the debtor's bankruptcy case is

17  pending.  *See Reid-Ashman Mfg., Inc. v. Swanson Semiconductor Serv., L.L.C.*, No. C-06-04693

18  JCS, 2008 WL 425638, 2008 U.S. Dist. LEXIS 14748 (N.D. Cal. Feb. 14, 2008).   Moreover, the

19  party seeking to transfer venue bears the burden of showing by a preponderance of the evidence

20  that transfer would be appropriate.  *In re Nat'l Consumer Mortg. LLC*, 2010 U.S. Dist. LEXIS

21  153351, 2010 WL 2384217 (Bankr. C.D. Cal. 2010) *citing TIG Ins. Co. v. Smolker*, 264 B.R. at

22  668.

23         In reviewing the "interests of justice," under a  § 1412 analysis, courts have considered, in

24  addition to the location of the pending bankruptcy, (1) whether the transfer would promote the

25

26  ───────────────

27  [5] Section 1412 is typically used to transfer a case to another district so that the case may be referred to that
    district's bankruptcy court.  *See, e.g., Jackson v. Fenway Partners, LLC*, No. C 13-00005 JSW, 2013 U.S.
    Dist. LEXIS 70138, 2013 WL 2147232, at *1 (N.D. Cal. May 15, 2013); *Mendoza v. Gen. Motors, LLC*,
28  No. CV 10-2683 AHM VBKX, 2010 U.S. Dist. LEXIS 134694, 2010 WL 5224136, at *1 (C.D. Cal. Dec.
    15, 2010).

economic and efficient administration of the bankruptcy estate; (2) whether the interests of

judicial economy would be served by the transfer; (3) whether the parties would be able to receive

a fair trial in each of the possible venues; (4) whether either forum has an interest in having the

controversy decided within its borders; (5) whether the enforceability of any judgment obtained

would be affected by the transfer; and [6] whether the plaintiff's original choice of forum should

be disturbed.  *See In re TIG*, 264. B.R. at 668.  Similarly, in reviewing the "convenience of the

parties," courts have considered the: (1) the location of the plaintiff and the defendant; (2) the ease

of access to the necessary proof; (3) the convenience of the witnesses and the parties and their

relative physical and financial condition; (4) the availability of the subpoena power for unwilling

witnesses, and the expense related to obtaining witnesses.  *See id.; see also, In re Cytodyn of New

Mexico, Inc.*, 374 B.R. 733, 742 (Bankr. C.D. Cal. 2007).[6]  When considering both the interests of

justice and the convenience of the parties, a court's analysis is "inherently factual and necessarily

entails the exercise of discretion based on the totality of the circumstances." *In re Donald*, 328

B.R. 192, 204 (B.A.P. 9th Cir. 2005).

In the instant case, the Court's exercise of discretion in its review of the totality of

circumstances, subject to the presumption in favor of retaining jurisdiction of the case, results in

neither the interests of justice nor convenience of the parties supporting transfer of venue to

Maryland.  Contrary to Ditech's arguments, the "vast majority" of the Debtor's business

operations do not and did not take place in Maryland.  The Debtor was a multi-state default

litigation firm which conducted business directly or indirectly in multiple states, and maintained a

physical presence in New York, New Jersey, Pennsylvania, California.  The Debtor also

maintained a non-physical business presence and extensive local counsel relationships in Florida,

North Carolina, Connecticut, Texas, Arizona, Colorado and other states.  Similarly, none of the

---

[6] Unlike its general federal transfer counterpart, §1412 statutory standards for transferring a bankruptcy case which invoke "convenience of the parties," do not expressly include convenience of witnesses. *See* 1 Collier on Bankruptcy ¶ 4.04[3] (Alan N. Resnick & Henry J. Sommer eds. 15th ed. rev. 2005).  The Bankruptcy Appellate Panel of the Ninth Circuit has noted that "[w]hether . . . this distinction makes any difference in the end is debatable."  *In re Donald*, 328 B.R. at 204 ("The analysis of any combination of 'interest of justice' and 'convenience of parties' under § 1412 is inherently factual and necessarily entails the exercise of discretion based on the totality of the circumstances, which may include considerations regarding witnesses and the presentation of evidence.").

1   Debtor's clients maintained principal places of business in Maryland.  Its largest clients were

2   spread throughout the country in such jurisdictions as Utah, Oregon, Colorado and Washington

3   and these clients hired the Debtor firm to handle business transactions in all of the aforementioned

4   states and many more.  As Ditech, the movant herein, is fully aware, it had hired the Debtor to

5   conduct business and initiate legal proceedings on its behalf in many states other than simply

6   Maryland.  In turn, attendant business and operational functions were performed in all of these

7   states.  On top of this collection of national business engagements, relationships and business

8   transactions, essentially, tantamount to a nationwide business operation, Debtor's core business

9   decisions were made in Irvine, California, by its 98% owned general partner, LF.  Budgeting,

10   staffing, site locations, banking and renting needs, hiring and all other key operational functions

11   and decision making were made outside of Maryland.  Similarly, all LF principals reside and work

12   in California.

13         Under the totality of the circumstances, under an "interests of justice" analysis, the transfer

14   to Maryland would serve no greater function than California to promote the economic and

15   efficient administration of the bankruptcy estate.  All of the decisionmakers and key operational

16   functions, such as accounting, for example, are handled in the Irvine office.  In turn, the interests

17   of judicial economy are no better served in Maryland.  Debtor does not purport to maintain any

18   substantive assets such that Maryland courts would be better suited than California courts to

19   administer the estate.  Next, clearly, all parties to the Debtor's bankruptcy could expect to receive

20   a fair trial in either venue.  Additionally, California has an interest in having the case handled

21   within its jurisdiction as the 98% owner of the Debtor is located and transacts business in

22   California and is entitled to the proper administration of justice within its own jurisdiction.  There

23   is no issue with respect to the viability of any judgment being affected by not being obtained in or

24   transferred from Maryland.  For all these reasons, Ditech has neither carried its burden nor in any

25   way sufficiently established any basis to disturb the debtor's present choice of forum.

26   Accordingly, none of the *TIG* and *Cytodyn* interests of justice factors support or warrant venue

27   transfer under 28 U.S.C. § 1412.

28

1      Similarly, under the totality of the circumstances, Ditech fails to meet its burden to

2  establish that the "convenience of the parties" are better served outside of California.  The 98%

3  owner of the Debtor and all of the owner's principals work and reside in California in the

4  jurisdiction of the Central District of California – Santa Ana Division.  **Even Ditech, the movant**

5  **herein, does not maintain its principal place of business in Maryland.  Ditech is**

6  **headquartered in Pennsylvania.**  Moreover, Ditech readily retained and secured able California

7  counsel to file the instant Motion and otherwise protect its rights.  With regard to the ease of

8  access to necessary proof factor, all of Debtor's key financial and corporate information is housed

9  at LF in Irvine.  Notwithstanding the presence of a few Debtor employees in the Maryland office,

10  all data is housed on LF's secured computer servers in Irvine.  Any and all computer obtained

11  electronic information accessible in Maryland is merely utilized via computer terminals that

12  access all information from California.  The Debtor's Maryland office has no on-site data of its

13  own.

14      As to the convenience of possible witnesses, same are located as needed throughout the

15  country, whether the Debtor, creditors or other interested parties.  There may not necessarily be

16  such parties in Maryland and as previously indicated, Ditech, the movant herein, itself is not even

17  headquartered in Maryland.  In turn, with regard to the relative physical and financial condition of

18  the parties, again, Debtor has no core operational decisionmakers in Maryland.  All are located in

19  Irvine and this Court is most convenient in that regard.  Inasmuch as the Debtor has sought

20  bankruptcy protection, its financial condition is certainly not a strength.  Moreover, as set forth in

21  *In re Donald* and its related authoritative support, the § 1412 statutory standards for transferring a

22  bankruptcy case which invoke "convenience of the parties," do not expressly include convenience

23  of witnesses.  *See In Re Donald*, 328 B.R. at 204; 1 Collier on Bankruptcy ¶ 4.04[3] (Alan N.

24  Resnick & Henry J. Sommer eds. 15th ed. rev. 2005).  The final factor to be considered in a

25  "convenience of parties" analysis is the availability of subpoena power, which would likewise not

26  be at issue whether this case was administered in California or Maryland.  Certainly, no greater

27  subpoena power would generate out of the Maryland court.

28

1    As demonstrated above, whether reviewing the case from an "interests of justice" or

2    "convenience of the parties" analysis under 14 U.S.C. §1412 and its progeny, Ditech has failed to

3    sustain its burden which would justify transfer of venue of the subject case to Maryland.  The

4    Debtor conducts business and operations, both with a physical and non-physical presence in

5    multiple jurisdictions.  Its clients are national and none are headquartered in Maryland.  The

6    Debtor's owner, LF, has a 98% stake in the company and is located in Irvine, California, where all

7    of its principals and key corporate decision makers reside and work.

8    **D.    Ditech's Recent February 11, 2019 Bankruptcy Filing Chose The Southern**

9    **District of New York as a Proper Venue Despite Its Multi-State Operations and**

10    **Majority of Day-To-Day Business Operations in Fort Washington,**

11    **Pennsylvania**

12    Ditech itself filed for Chapter 11 Bankruptcy protection, and chose to do so in the Southern

13    District of New York despite the fact that its state of incorporation is Maryland, as are its principal

14    executive offices, upon information and belief, and the majority of its day-to-day operations are all

15    located in Fort Washington, Pennsylvania.[7]

16    As a multi-state business, Ditech cannot come to this Court complaining about improper

17    venue as it chose a venue in New York when the majority of its day-to-day operations are all

18    located in Fort Washington, Pennsylvania.

19    ///

20    ///

21

22

23

24

25

26    [7] *See* Ditech Holding Corporation Securities and Exchange Commission Form 8-k, February 11,
2019, available at http://investor.walterinvestment.com/phoenix.zhtml?c=227999&p=irol-

27    SECText&TEXT=aHR0cDovL2FwaS50ZW5rd2l6YXJkLmNvbS9maWxpbmcueG1sP2lwYWdlP
TEyNjg5MDAzJkRTRVE9MCZTRVE9MCZTUURFU0M9U0VDVElPTl9FTlRJRUJUUkUyc2lk

28    PTU3

1

2    **IV.**    **CONCLUSION**

3    For the foregoing reasons, Debtor respectfully requests that the Court deny the Motion and

4    grant any such other relief that the Court deems appropriate.

5

6    Dated: February 13, 2019                                   Respectfully submitted by
                                                                 GOE & FORSYTHE, LLP

7

8                                                                By: */s/Marc C. Forsythe*
                                                                     Marc C. Forsythe
                                                                     Proposed Attorneys for BP Fisher Law
9                                                                    Group, LLP, Debtor and Debtor in
                                                                     Possession

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF MATTHEW C. BROWNDORF

I, Matthew C. Browndorf, pursuant to 28 U.S.C. §1746, declare as follows:

1.      At all relevant times herein, I am and have been the majority shareholder of LF Runoff 2 ("LF"), the general partner of the Debtor, and I own real property in and have been a citizen and domiciled in California.   I am over the age of twenty-one years, and I am authorized and competent to testify to the matters contained herein. I make this Declaration in support of Debtor's Opposition to Motion by Ditech Financial, LLC to Dismiss, or in the Alternative, To Transfer Venue.

2.      The Debtor is a default multi-state law firm that operates in several jurisdictions.

3.      In addition to the Maryland operations that Ditech's Motion focuses on, the Debtor also has a physical presence in New Jersey and New York where it handles residential mortgage default related proceedings in those states as well as in Irvine, California, where its subsidiary entity, Civil Demand Associates ("CDA") and 98% general partner, LF, are physically located.

4.      While many of the day-to-day aspects of the Debtor's residential mid-Atlantic default operations occurred within Maryland, the Debtor's operations were also conducted directly in other states through offices physically located in New Jersey, New York, and California.  In addition, the Debtor also indirectly operated in numerous other states including but not limited to Florida, North Carolina, Connecticut, Texas, Arizona, and Colorado through the use of local counsel agreements.

5.      During all relevant time periods, all the major business decisions regarding this extensive Debtor network were and are made in Irvine, California, where the Debtor's general partner, LF, is physically located.

6.      Attached hereto as **Exhibits "1" and "2"** are true and correct photographs that I took of Debtor's physical office space located at 1900 Main Street in Irvine, California, which includes a name plate at this office building with Debtor's name referenced.

7.      As the 98% owner of Debtor, LF is the final decision-maker with respect to all Debtor's major business decisions.

8.      The Debtor firm was purchased by LF in June 2015 as part of its effort to develop a nationwide network of affiliated default law firms.  LF also subsequently acquired another default law firm, BP Peterman Law Group LLC, located in Wisconsin, with additional offices in Illinois and Indiana, and until recently had been in the process of further expanding this network through proposed acquisitions of other default law firms.

9.      The day to day operations of the Debtor firm was originally locally managed by the selling partner, Jeffrey B. Fisher.  During the time Mr. Fisher was present, LF was primarily responsible for managing the back-office functions, providing capital infusions and making major business decisions relating to such matters as the location of the office (LF made the decision to move the Debtor firm to National Harbor, MD), downsizing the Debtor's staffing (LF was forced to conduct substantial downsizing during this period in an attempt to right-size the business) and determining in what jurisdictions the Debtor would operate (LF made the decision to directly expand Debtor operations into New Jersey, New York and Pennsylvania and indirectly, through local counsel agreements, expand Debtor operations into numerous other jurisdictions).

10.     However, shortly after the acquisition of the Debtor by LF, the relationship between LF and Mr. Fisher became strained and in late 2016 Mr. Fisher left the Debtor firm entirely.  The Debtor firm then faced a transitory period during which it faced a revolving door of regional managing attorneys in the Debtor's Maryland office.  As a result, LF made the decision to invest in regional management by bringing in two highly-compensated individuals to try and turn around this troubled Debtor firm – one to serve as an administrative office manager (Andrew Corcoran) and one to serve as a new managing partner in Maryland (Shannon Kreshtool).

11.     Under the direct supervision of and in coordination with LF management, these two individuals engaged in significant efforts to try and resolve the Debtor's problems in the Maryland office but were unable to do so and eventually in the fall of 2018, the Firm was terminated by Fannie Mae who revoked its no-objection letter attorney network firm status.

12.     The loss of the "Fannie ticket" forced LF to investigate other strategic alternatives as a means of salvaging the Debtor firm.

13.    As the general partner of the Debtor, LF made significant efforts to resolve the issues with Fannie Mae, made the decision to implement significant cost reduction measures in order to try to stabilize the Debtor firm and even considered strategic alternatives such as combining the Debtor firm with other affiliated firms as a means to solve the problems faced by the Debtor.  None of these proved to be immediately viable, however, and as the Debtor continued to face more and more issues and litigation, LF eventually came to the unfortunate conclusion that the Debtor firm must file for bankruptcy protection in order to either try and salvage it in some alternative form or, if that was not possible, to responsibly wind it down.

14.    Throughout this period, LF made and continues to be the final decision-maker with respect to any major business decisions for the Debtor firm including decisions relating to critical items such as (i) where to house the Debtor's different offices; (ii) the appropriate budget for the Debtor staffing; (iii) the hiring and firing of the Debtor's local management; (iv) how much to leverage the Debtor; and (v) whether to continue operating the Debtor firm at a loss or, as was finally decided, whether to declare bankruptcy.

15.    Indeed, many of the items discussed in Ditech's motion were the result of decisions made in California by LF.  LF made the decision to initially house the Debtor's Maryland staff at 174 Waterfront Street in National Harbor, MD and LF made the decision to terminate that lease and move the Debtor's Maryland office to its new location in Bowie, Maryland.

16.    LF made the decision to hire Ms. Kreshtool and Mr. Corcoran to be physically present as local turn-around leadership in the Debtor's Maryland office for the primary purpose of trying to turn around the highly troubled firm.  Moreover, it is LF that made the decision to place the Debtor firm into bankruptcy as well as, more recently, to place the Debtor's affiliated law firm, BP Peterman Law Group LLC, and itself into bankruptcy as well.

17.    On January 15, 2019, under the direction of LF, the Debtor filed for Chapter 11 bankruptcy protection in this Court as part of LF's over-arching decision to exit the default law firm business.

18.    As of the date of this declaration, LF intends to file as of the date of this declaration a Chapter 11 bankruptcy petition.  LF also is in the process of filing for Chapter 11 bankruptcy

protection for its other affiliated default law firm, BP Peterman Law Group LLC, which has (or during the relevant time period had) offices in Wisconsin, Indiana, and Illinois to conduct default law services in the Midwest.  LF intends to file a motion for joint administration of the bankruptcy cases in order to consolidate these three separate but substantially related bankruptcy proceedings.

19.    Among other things, LF, as the Debtor's general partner, made all the key business decisions regarding: (i) the budget for staffing at the Debtor including staffing within the Debtor's Maryland office and the appropriate compensation for the Debtor's regional managers; (ii) the location of all the Debtor's offices and the jurisdictional footprint of the Debtor firm including whether to expand into or retract from certain jurisdictions; (iii) what banks the Debtor should use for its local and national banking needs; (iv) how much to leverage the firm in connection with its effort to resolve the operational financial issues the Debtor was facing and what sources of debt the Debtor should utilize; and (v) whether to continue operating the Debtor firm at a loss or, as was finally decided, whether to file this petition pursuant to chapter 11 of the bankruptcy code.

20.    Ditech is well aware that many of the Debtor's checks were written out of accounts not located in Maryland and sent out directly from LF staff located in Irvine, California.

21.    Debtor maintains two accounts in Maryland, one operating account and one trust account, and it also maintains numerous accounts in other jurisdictions as it also directly or indirectly does business in other states including but not limited New Jersey, New York, Pennsylvania, and California

22.    In connection with its business in these other jurisdictions (as well as in connection with the back-office services provided to Debtor by LF and its affiliates), Debtor maintains numerous other accounts that are controlled by its managing member, LF, in Irvine, California, outside of Maryland.  The majority of the funds within the Debtor's possessions are held within these non-Maryland accounts controlled by the Debtor's general partner, LF.

23.    The two Debtor partners that are physically located in the Maryland office (one of which only functions as an administrative office manager) only represent two of the four Debtor firm partners on a plain headcount basis and, more importantly, only represent *2%* of the Firm partners on a much more pertinent equity based pro rata analysis.  On the equity based pro rata

analysis, 98% of the firm partnership is located in Irvine, California as that is the location of the Debtor's general member, LF.

24.     It is telling that all of the decisions regarding the hiring and compensation of the Maryland regional leadership are made by LF in Irvine, California.  As managing member of LF, I personally interviewed, made offers to and determined compensation for both of the above discussed individuals.  This is common, as LF generally makes the final decision with respect to all of the major decisions regarding Debtor's staffing including the appropriate staffing budget and any decisions regarding the hiring, appointment, termination, compensation and title of any senior staff in the Debtor's Maryland office as well as all of the other Debtor offices.

25.     As the general partner of Debtor, I, on behalf of LF, made the decision to lease space in National Harbor, Maryland for Debtor's Mid-Atlantic hub, the decision to terminate the National Harbor lease pursuant to a settlement with the landlord in order to reduce operational overhead costs, and the final decision to move the Maryland office to its current location in Bowie, Maryland.  The terms of these leases, the terms of the settlement with the landlord and all of the other final decisions regarding Debtor's locations were made in Irvine, California.

26.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.


Executed this  13   day of February, 2019, in Irvine, California.


_____
Matthew C. Browndorf

# EXHIBIT 1

# EXHIBIT 1



# EXHIBIT 2

# EXHIBIT 2



# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 18101 Von Karman Avenue, Suite 1200, Irvine, CA 92612

A true and correct copy of the foregoing document entitled (*specify*): **DEBTOR'S OPPOSITION TO MOTION BY DITECH FINANCIAL, LLC TO DISMISS, OR IN THE ALTERNATIVE, TO TRANSFER VENUE; DECLARATION OF MATTHEW C. BROWNDORF IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.    TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) <u>February 13, 2019</u>, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Frank Cadigan**    frank.cadigan@usdoj.gov
- **Marc C Forsythe**    kmurphy@goeforlaw.com, mforsythe@goeforlaw.com;goeforecf@gmail.com
- **Robert P Goe**    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com
- **Brian D Huben**    hubenb@ballardspahr.com, carolod@ballardspahr.com
- **Christopher O Rivas**    crivas@reedsmith.com, chris-rivas-8658@ecf.pacerpro.com
- **Najah J Shariff**    najah.shariff@usdoj.gov, USACAC.criminal@usdoj.gov
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov
- **Amelia B. Valenzuela**    avalenzuela@wedgewood-inc.com, dmarcus@wedgewood-inc.com;aguisinger@wedgewood-inc.com

☐    Service information continued on attached page

**2.    SERVED BY UNITED STATES MAIL**:
On (*date*) <u>February 13, 2019</u>, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows: Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐    Service information continued on attached page

**3.    SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**:
(state the method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) <u>February 13, 2019</u>, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows:  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

- The Honorable Theodor C Albert, USBC, 411 West Fourth Street, Santa Ana, CA 92701

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| February 13, 2019 | Susan C. Stein | /s/Susan C. Stein |
| --- | --- | --- |
| *Date* | *Printed Name* | *Signature* |